## LENA HERTZ v. WATAB PAPER COMPANY AND ANOTHER.[1]

July 3, 1931.

No. 27,824.

*Atwood & Quinlivan,* for employe and his widow.

*W. H. Stewart* and *K. A. Campbell,* for employer and its insurer.

[1]Reported in 237 N. W. 610.

DIBELL, J.

This proceeding in certiorari was instituted by the employe, William E. Hertz, to review the order of the industrial commission denying him compensation. On April 17, 1930, after argument but before a decision, we remanded the proceeding to the commission to take further evidence and report its findings. 180 Minn. 177, 230 N. W. 481. Further testimony was taken. Before submission the employe died. Lena Hertz, his widow and guardian of their minor child, was substituted as relator. The commission found from the evidence first taken and the additional evidence, including the results of an autopsy, that he sustained an accidental injury to his pelvic bone on September 25, 1928; that the injury arose out of and in the course of his employment for the defendant; and that such injury resulted in his death on August 22, 1930.

The autopsy sufficiently determined the cause of the employe's death to be fibrosarcoma arising in the right pubic bone of a type which might be called primary sarcoma of the bone or osteogenic sarcoma.

The evidence that the sarcoma from which the employe died was caused by an injury sustained in September, 1928, is more definite and certain and persuasive than prior to the taking of the additional testimony. The doctors differ in their opinions. Some decline to express an opinion at all, feeling that with them it is a question of conjecture. Some are predisposed against the view that trauma plays a part in cancer. Some think trauma is a likely attendant. Some require more persuasive evidence than others in reaching a conclusion that cancer results from trauma. Some approach the question with the feeling that something like a scientific demonstration is necessary.

The physicians testifying were well qualified in scientific learning and practical experience of years. Their desire to be fair is strikingly apparent. They differ in opinion or have none. Considering their views in connection with the facts in evidence, the commission was justified in finding as it did that the injury to the employe, though slight, either originated the sarcoma or exaggerated and excited it so as to be within the law's view, when administering the

compensation act, the cause of it. Sarcoma from trauma is difficult of tracing. The injury from which it develops may be trifling, perhaps is more often trifling than severe. One physician testifies:

"My opinion is that the connection between trauma and the subsequent development of sarcoma, which usually develops months afterwards, may be many times overlooked due to the triviality of the injury. Just a mere bump. The patient doesn't remember."

We have often held in particular cases that trauma may be found from the evidence to be the primary or the exciting cause of sarcoma, and we have sustained a contrary finding. Gaetz v. City of Melrose, 155 Minn. 330, 193 N. W. 691; Austin v. Red Wing S. P. Co. 163 Minn. 397, 204 N. W. 323; Storing v. Hotel Radisson Co. 177 Minn. 519, 225 N. W. 652; Halper v. The Golden Rule, 180 Minn. 477, 231 N. W. 195. And see Hogan v. Twin City A. T. Estate, 155 Minn. 199, 193 N. W. 122. We are in harmony with the prevailing holdings. In Winchester Milling Corp. v. Sencindiver, 148 Va. 388, 395, 138 S. E. 479, 481, a case in some respects similar to the one before us, Chichester, J. in sustaining a finding that an injury resulted in sarcoma causing death, said:

"Taking a common sense, practical view, as courts and commissions must take of the ordinary happenings of life, boiled down to its last analysis the medical theory is that there is a relationship between the receipt of injury and origin of sarcoma, and that the degree of injury plays no important part. With this in mind we find a perfectly healthy, strong man who has never lost any time from work or complained of any illness, suffers an injury and from that time on is incapacitated, grows worse and worse, sarcoma develops at the point of injury, from which he dies. The lay mind, under such circumstances, can reach no other conclusion than that reached by the commission, viz: that the sarcoma was either caused by the injury or was aggravated by it."

In that case the court quoted from the opinion of Pickford, L. J. in Lewis v. Port of London Authority, 7 B. W. C. C. 577, 587, 111 L. T. Rep. 776, 779, as follows:

"There was evidence that, up to the time of the accident, he had been a man of excellent health, able to do his work perfectly well and showing no signs of any of the other causes, such as chronic irritation, which were possible causes of the malignant tumour. There was evidence also that, very shortly indeed after the accident, he did experience pains in the back—the expression used by the wife is that he said there was a 'heavy drag on his back.' He was never strong after the accident, having been perfectly strong before. In a short time he had developed symptoms such as would have existed from the malignancy of the tumour, and he continued to exhibit those symptoms until he was operated upon and the malignant tumour was discovered. There is the evidence not only of the wife, but also of the man who was working with him, that he was in perfectly good health before the accident, and he never was anything like the same man afterwards. Now, upon those materials it seems to me it is no longer a question of surmise—it is a question of inference to be drawn from those facts—whether the accident is established as the cause, there being evidence of the accident and evidence of matters following the accident which would follow if the accident had caused the malignancy of the tumour, and no evidence of any of the other causes which were suggested."

The commission is experienced in the weighing of evidence and in the consideration of medical testimony. Taking the lay testimony and the medical testimony, it was well justified in finding a causal connection between the injury, though it was slight, and the sarcoma resulting in the employe's death. Its award of compensation should be affirmed.

An attorney's fee of $100 is allowed.